**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Criminal No. 06-167 |
| ) | |
| MICHAEL MENDOZA, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**OPINION**

I.   Introduction

Pending before the court is a renewed motion for compassionate release (ECF No. 175) filed by counsel on behalf of defendant Michael Mendoza ("Mendoza"). The government filed a response, admitting that Mendoza exhausted his administrative remedies, but opposing relief on substantive grounds (ECF No. 177). Mendoza filed a reply (ECF No. 178). The motion is ripe for disposition.

II.   Procedural Background

On January 27, 2021, the court denied Mendoza's initial motion for compassionate release without prejudice, because he failed to meet his burden to establish that he exhausted his administrative remedies (ECF Nos. 173, 174). In the renewed motion, Mendoza submits that he requested relief from the Bureau of Prisons ("BOP") on November 12, 2020, the BOP did not respond, and he waited more than 30 days to seek relief in court. The government concedes that Mendoza properly exhausted his administrative remedies. The court concludes that Mendoza's renewed motion for compassionate release is ripe for decision on the merits. United States v. Harris, No. 20-1723, 973 F.3d 170 (3d Cir. 2020).

III.     Factual Background

On May 5, 2006, Mendoza was indicted on one count of conspiracy to distribute and possess with intent to distribute 5 or more kilograms of cocaine in May 2005, and continuing thereafter until December 2005, in violation of 21 U.S.C. § 846 (ECF No. 11).  A jury found him guilty after trial.  The government filed a § 851 Information about a prior felony drug conviction (ECF No. 65).  On December 12, 2007, the court imposed the statutory mandatory minimum sentence of imprisonment of 240 months, to be followed by 10 years of supervised release (ECF No. 92).  The court found that Mendoza was responsible for 25-35 kilograms of cocaine and that he committed this offense less than 2 years after being released from prison on a prior drug trafficking crime (ECF No. 89).  The Court of Appeals for the Third Circuit affirmed the conviction and sentence (ECF No. 106).  The court of appeals also affirmed the denial of Mendoza's § 2255 motion and request for a new trial (ECF No. 157).

Mendoza is currently incarcerated at FMC Fort Worth, a federal medical center in Fort Worth, Texas. https://www.bop.gov/locations/institutions/ftw/, last visited March 19, 2021. There are 1,296 inmates at the facility. The Bureau of Prisons ("BOP") website reflected that on April 8, 2021, there were 1 inmate and 2 staff members with active cases of COVID-19. https://www.bop.gov/coronavirus/index.jsp, last visited April 8, 2021.

Mendoza contracted the COVID-19 virus in May 2020 and had severe symptoms which necessitated a 6-day hospitalization.  Mendoza was later fully vaccinated against the COVID-19 virus, and vaccinations of staff and other inmates at FMC Fort Worth are ongoing.  Mendoza received the 2-step Pfizer vaccine on February 25 and March 15, 2021 (ECF No. 177-1).  His counsel's renewed compassionate release motion was filed on March 1, 2021, and did not address the impact of his vaccination.  In his reply, Mendoza contends that he still faces a risk of

exposure to the COVID-19 virus, is unable to engage in social distancing due to his confinement, and still has underlying medical conditions that pose a risk of a severe reaction to the virus. He argues there are uncertainties about whether vaccines are effective against variants of the virus and how long the vaccine protections will last. Mendoza did not present any evidence about the impact of his vaccination on his risk of contracting the Covid-19 virus again or his risk of experiencing severe symptoms if he does get reinfected.

Mendoza is now 50 years old. His projected release date, which reflects credit for good time, is October 17, 2023. He has served approximately 15 years in prison (ECF No. 175-17).[1] https://www.bop.gov/mobile/find_inmate/index.jsp#inmate_results, last visited March 19, 2021. Mendoza lost 41 days of good time credit as a sanction for escaping from an unsecured area in 2014 (ECF No. 175-19).

    IV.    Discussion

        **A. Applicable Law**

Mendoza seeks compassionate release from imprisonment. A district court has only limited authority to "modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); United States v. Savani, 733 F.3d 56, 60 (3d Cir. 2013). The Third Circuit Court of Appeals has recognized that Congress enacted exceptions to this "general rule of finality" in 18 U.S.C. § 3582(c)(1). United States v. Easter, 975 F.3d 318, 323 (3d Cir. 2020) (explaining that "[s]entence modifications under § 3582(c) constitute 'exception[s] to the general rule of finality' of sentences") (quoting Dillon v. United States, 560 U.S. 817, 824 (2010)).

    Section 3582(c)(1)(A) provides:

---

[1] Mendoza's erroneous contention that he served over 17 years in prison appears to be calculated by subtracting the time remaining until his projected release date (approximately 2 ½ years) from his original 20-year prison term.

3

> **(c) Modification of an imposed term of imprisonment.**--The court may not modify a term of imprisonment once it has been imposed except that—
>
> > (1) in any case--
> >
> > > (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
> > >
> > > > (i) extraordinary and compelling reasons warrant such a reduction; or
> > > >
> > > > (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
> > >
> > > and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission….

18 U.S.C. § 3582(c)(1)(A). The foregoing statutory provision sets forth a *three-part analysis* for district courts to utilize to resolve a motion for compassionate release. The Third Circuit Court of Appeals has instructed that pursuant to § 3582(c)(1)(A), "a district court 'may reduce [a federal inmate's] term of imprisonment' and 'impose a term of probation or supervised release … if it finds that … extraordinary and compelling reasons warrant such a reduction.'" United States v. Pawlowski, 967 F.3d 327, 329 (3d Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)). "[B]efore granting compassionate release," however, "a district court must 'consider[] the factors set forth

in [18 U.S.C. §] 3553(a) to the extent that they are applicable." Id. (quoting 18 U.S.C. § 3582(c)(1)(A)). The court must also consider whether a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission, 18 U.S.C. § 3582(c)(1)(A). United States v. Doe, No. 20-2650, 2020 WL 6328203, at *1, n.2 (3d Cir. Oct. 29, 2020).

Based upon the foregoing, to grant Mendoza compassionate release under § 3582(c)(1)(A), the court must analyze whether: (1) extraordinary and compelling reasons exist for his release; (2) compassionate release is warranted in consideration of the § 3553(a) factors;[2] and (3) compassionate release is consistent with applicable policy statements issued by the Sentencing Commission.

Mendoza bears the burden of proof by a preponderance of the evidence to show that he is entitled to compassionate release. United States v. Smith, No. CR 9-187, 2020 WL 4047485, at *2 (W.D. Pa. July 20, 2020) (citing United States v. Adeyemi, No. CR 06-124, 2020 WL 3642478, at *16 (E.D. Pa. July 6, 2020)). Courts have held that to satisfy this burden, a movant

---

[2] The factors set forth in 18 U.S.C. § 3553(a) are:
- the nature and circumstances of the offense and the history and characteristics of the defendant, § 3553(a)(1);
- the need for the sentence imposed to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, § 3553(a)(2)(B)-(D);
- the sentencing range established by the Sentencing Commission, § 3553(a)(4);
- any pertinent policy statement issued by the Sentencing Commission, § 3553(a)(5);
- the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, § 3553(a)(6); and
- the need to provide restitution to any victims of the offense, § 3553(a)(7).

must produce evidence to the court. See e.g., United States v. Matthews, Crim. Action No. 09-612-1, 2020 WL 5217132, at *6 (E.D. Pa. Sept. 1, 2020); United States v. Brunetti, Crim. Action No. 2020 WL 4516541, at *6 (E.D. Pa. July 31, 2020); United States v. Richardson, Crim. No. 18-507, 2020 WL 2200853, at *2 (E.D.N.C. May 6, 2020).

## B. Extraordinary and Compelling Reasons

### 1. General Background

Prior to the enactment of the First Step Act on December 21, 2018, only the Director of the BOP could file a motion for a sentence reduction under §3582(c)(1)(A)(i). Ray v. Finley, No. 3:19-CV-0988, 2019 WL 5569616, at *3 (M.D. Pa. Oct. 29, 2019). The First Step Act amended § 3582(c)(1)(A), which now provides that "a motion for reduction in sentence may be filed by either the Director of the BOP or a federal inmate" after the federal inmate exhausts administrative remedies. Id.

"Congress did not define 'extraordinary and compelling reasons' except to provide 'rehabilitation…alone' does not suffice." Adeyemi, 2020 WL 3642478, at *7 (quoting 28 U.S.C. § 994(t)). The Third Circuit Court of Appeals has explained that "compelling and extraordinary" reasons for the reduction of a sentence are "defined by the commentary to policy statement U.S.S.G. § 1B1.13." United States v. Handerhan, No. 19-1904, 789 F. App'x 924, 925 (3d Cir. 2019) (citing United States v. Barberena, 694 F.3d 514, 521 n.10 (3d Cir. 2012)). "That commentary currently lists four categories of such reasons: (1) the defendant's medical condition; (2) the defendant's age; (3) the defendant's family circumstances; and (4) 'other reasons' as determined by the Director of the Bureau of Prisons." Id. (quoting U.S.S.G. § 1B1.13 cmt. n.1.). The court in Adeyemi explained the first three categories as follows:

> The first category includes incarcerated persons suffering from terminal illnesses, such as metastatic solid-tumor cancer, amyotrophic lateral sclerosis,

end-stage organ disease, and advanced dementia, or those suffering from medical conditions, impairments, or deteriorations due to age that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."…The second category includes incarcerated persons who are at least sixty-five years old, experience a serious deterioration in physical or mental health because of the aging process; and have served at least ten years or seventy-five percent of their term of imprisonment, whichever is less….The third extraordinary and compelling reason may arise where the primary caregiver of the incarcerated person's minor child or children died or became incapacitated or where the incarcerated person's spouse became incapacitated and he is the only available caregiver for the spouse.

Adeyemi, 2020 WL 3642478, at *7 (citing U.S.S.G. § 1B1.13 cmt. n.1(A)-(C)).

The court of appeals in Handerhan explained that "[t]he Sentencing Commission has not yet amended § 1B1.13 or its commentary to account for the First Step Act…[and] the District Courts are divided on whether and how to apply the catch-all 'other reasons' category and its reference to determinations made by the Director." Handerhan, 789 F. App'x. at 925 n.1 (citing United States v. Fox, No. 2:14-cr-03-DBH, 2019 WL 3046086, at *2 (D. Me. July 11, 2019)). While U.S.S.G. § 1B1.13 was not updated to reflect the First Step Act amendments, the Commission's policy statement "does not constrain a court's independent assessment about whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)." United States v. Somerville, No. 2:12-CR-225-NR, 2020 WL 2781585, at *6-7 (W.D. Pa. May 29, 2020) (holding the court has authority to independently assess whether there are "extraordinary and compelling reasons" to reduce a defendant's sentence).³

---

³   This conclusion is shared by the "vast majority" of courts that have considered "whether courts may independently evaluate extraordinary and compelling reasons to reduce sentences" under the catchall provision of U.S.S.G. § 1B1.13. Adeyemi, 2020 WL 3642478, at *10 (collecting decisions); United States v. Andrews, Crim. Action No. 05-280-02, 2020 WL 4812626, at *3 (E.D. Pa. Aug. 19, 2020) (finding that district courts "overwhelmingly conclude that a court can make an independent determination of what constitutes extraordinary and compelling reasons"). For example, the court in Adeyemi explained that the directive in U.S.S.G. § 1B1.13 that the Director of the BOP determines whether "other reasons" exist for the

"The starting point in discerning congressional intent is the existing statutory text[.]" Lamie v. U.S. Tr., 540 U.S. 526, 534 (2004). "Extraordinary and compelling" is not defined by statute, and, therefore, the court must give the terms their "'ordinary meaning.'" United States v. Diallo, 575 F.3d 252, 256 (3d Cir. 2009) (quoting Moskal v. United States, 498 U.S. 103, 108 (1990)). The court in Somerville explained:

> The word "extraordinary" is commonly understood to mean "going beyond what is usual, regular, or customary," or "exceptional to a very marked extent." *Extraordinary*, Merriam-Webster Dictionary (2020); see also *Extraordinary*, Black's Law Dictionary (11th ed. 2019) ("Beyond what is usual, customary, regular, or common.").
>
> The word "compelling" means "forceful," "demanding attention," or "convincing." *Compelling*, Merriam-Webster Dictionary (2020); see also *Compelling Need*, Black's Law Dictionary (11th ed. 2019) ("A need so great that irreparable harm or injustice would result if it is not met.").
>
> Thus, at a minimum, § 3582(c)(1)(A)(i) requires a justification for release that is both unusual (i.e., unique to the inmate, and beyond the ordinary hardship of prison) and significant (i.e., serious enough to make release appropriate).

Somerville, 2020 WL 2781585, at *7.

### 2. Consideration of COVID-19

The court in Somerville discussed a two-part analysis to determine whether the COVID-19 pandemic represents an extraordinary and compelling reason for a defendant's release. The court explained:

> While the Third Circuit has not articulated a definitive standard to be applied to § 3582(c) motions in this context, it has observed generally that the mere "existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner[.]" United States v. Roeder, 807 Fed. Appx.

---

compassionate release of a defendant is not authoritative because it contradicts with the plain language of 18 U.S.C. § 3582(c)(1)(A), which requires the court to find extraordinary and compelling reasons for a defendant's release. Adeyemi, 2020 WL 3642478, at *14-15 (citing United States v. LaBonte, 520 U.S. 751, 764 (1997); Stinson v. United States, 508 U.S. 36, 37 (1993)).

> 157, 161 n.16 (3d Cir. 2020). From that, the Court infers that a prisoner seeking release due to COVID-19 must at least show: (1) a sufficiently serious medical condition, or advanced age, placing the prisoner at a ***uniquely high risk*** of grave illness or death if infected by COVID-19; and (2) an actual, non-speculative risk of exposure to COVID-19 in the facility where the prisoner is held.

Somerville, 2020 WL 2781585at *4. (emphasis added). That two-part test needs to be modified in light of the vaccinations that are occurring in BOP facilities. Even if an inmate has serious underlying medical conditions and faces a non-speculative risk of exposure to the COVID-19 virus, the vaccine may prevent that inmate from contracting the virus or significantly reduce that inmate's risk of infection or reinfection.

The court needs to determine whether Mendoza set forth extraordinary and compelling reasons for his compassionate release based upon his medical conditions and the situation at FMC Fort Worth – taking into account his vaccination. Mendoza has the burden to produce evidence to show that: (1) he faces a uniquely high risk of grave illness or death if infected or reinfected by the COVID-19 virus, considering his underlying medical condition and age and the protective effects of the vaccine; and (2) he faces a non-speculative risk of contracting or recontracting the COVID-19 virus, considering both the risk of exposure at FMC Fort Worth and the preventative effects of the vaccine.

      a. Whether Mendoza faces a uniquely high risk of grave illness or death from being reinfected by the COVID-19 virus

In his motion, Mendoza contends that he has an uniquely high risk of grave illness or death from the COVID-19 virus due to: (1) his medical conditions of stage 3 chronic kidney disease and polyarthritis; (2) the severe symptoms he experienced when he contracted the COVID-19 virus in May 2020, including acute respiratory failure, bilateral pneumonia and an abscess and MRSA infection, which resulted in a 6-day inpatient hospitalization (ECF No. 175-

7); and (3) the lingering effects of a COVID-19 infection, including worsening polyarthritis, abscesses, and diminished lung capacity.

The government argues that Mendoza did not meet his burden to demonstrate extraordinary and compelling reasons for compassionate release. The government contends that because Mendoza is fully vaccinated, his risk of severe illness from the COVID-19 virus is substantially mitigated. The government contends that the BOP is providing appropriate care for Mendoza's medical conditions. The court will address these contentions seriatim.

> i. Medical conditions

Mendoza has a long history of significant arthritis, for which he has taken NSAIDs since at least 2002 (ECF No. 175-22). In August 2020 (after his recovery from a COVID-19 infection), Mendoza was diagnosed with stage 3 chronic kidney disease. An ultrasound revealed "no acute disease," but Mendoza was instructed to minimize NSAIDs. Id. In November 2020, Mendoza requested a refill of his prescription for Meloxicam (a NSAID) for his arthritis pain. During his hospitalization in May 2020, Mendoza was treated for an abscess in his left armpit. Tests confirmed a MRSA infection, for which he was prescribed an antibiotic. In July 2020, Mendoza reported painful red bumps and boils at the site of the abscess (ECF No. 175-14). He reports continuing need to drain, clean and dress the wound site and contends that the BOP failed to provide adequate bandages.

Chronic kidney disease of any stage is identified by the Centers for Disease Control ("CDC") as a risk factor for severe symptoms from a COVID-19 infection. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html, last visited March 22, 2021. The government concedes that, but for his vaccination, Mendoza's kidney disease would be an extraordinary and compelling reason to

consider his release.  Polyarthritis, joint pain, abscesses and a MRSA infection are not identified as conditions posing an increased risk from a COVID-19 infection.  Id.

### ii. Severe reaction to COVID-19

Mendoza suffered severe symptoms when he contracted the COVID-19 virus in May 2020.  He experienced acute respiratory distress and bilateral pneumonia.  Mendoza required emergency transportation to the hospital.  While in the hospital, he received oxygen and an albuterol inhaler.  As noted above, Mendoza also received incision and drainage surgery for an abscess in his armpit, which confirmed a MRSA infection.

Thankfully, after a 6-day inpatient hospitalization, Mendoza recovered.  Mendoza was returned to FMC Fort Worth on May 19, 2020 in stable condition (ECF No. 175-7).  An examination on May 21, 2020, reflected: "Currently no complaints of cough, no [shortness of breath], no [dyspnea on exertion], no chills, no fever, and no GI complaints."  (ECF No. 175-12).  In July 2020, he was classified as Care Level 1, i.e., not having any serious underlying medical condition that posed an increased risk from the COVID-19 virus.  (ECF No. 172 at 16).

### iii. Lingering symptoms from COVID-19

The CDC recognizes that some patients may have symptoms from a COVID-19 infection that can last for weeks or even months after recovery from acute illness.  The most commonly reported symptoms include fatigue, shortness of breath and joint pain. https://www.cdc.gov/coronavirus/2019-ncov/long-term-effects.html, last visited April 8, 2021.  The CDC did not report that abscesses are a common side-effect of a COVID-19 infection.  Id.

Since his return to prison, Mendoza has experienced continuing abscesses.  He reported relief from the prescribed antibiotics, with abscesses returning after the course of antibiotics is completed.  Mendoza reports a near nightly ritual of draining, cleaning and dressing the

abscesses himself due to a lack of bandages provided by the BOP.[4]

Mendoza reports a significant worsening of his joint pain since his COVID-19 infection and asserts that climbing stairs in prison has become unbearable. Mendoza reports that he faces an untenable choice – meloxicam provides some relief for his arthritis pain, but may be exacerbating the damage to his kidneys (ECF No. 175 at 21-22).

Mendoza's dilemma is understandable. His lingering symptoms, however, do not justify compassionate release. There is no evidence that the prison environment exacerbates Mendoza's conditions and it appears that he would face the same choice about whether to use NSAIDs to provide relief for his arthritis pain, despite the risk of further kidney damage, if he were released. The medical records reflect that Mendoza is, in fact, receiving medical treatment for his conditions. The court notes that Mendoza is serving his sentence at a federal medical center. The conditions do not prevent Mendoza from providing self-care in the correctional environment and the record reflects that he engages in his own wound care. He is classified in medical Care Level 1. In sum, the lingering symptoms do not warrant compassionate release, unless there is a non-speculative risk of reinfection with the COVID-19 virus.

                iv.    Vaccination

The government contends that because Mendoza is now fully vaccinated, he cannot establish that he faces an extraordinary or compelling risk from the COVID-19 virus. "Although vaccines are not one hundred percent effective, the CDC states that '[c]urrently authorized vaccines in the United States are highly effective at protecting vaccinated people against symptomatic and severe COVID-19.' Vaccines are particularly effective at preventing 'severe

---

[4] This court lacks jurisdiction to consider a claim for inadequate medical care, which must be presented to the district court for the geographical area in which Mendoza is incarcerated. Bruce v. Warden, Lewisburg USP, 868 F.3d 170, 178 (3d Cir. 2017).

illness and death.'" United States v. Singh, No. 4:15-CR-00028-11, 2021 WL 928740, at *2 (M.D. Pa. Mar. 11, 2021) (concluding that recent vaccination mitigated risk to such an extent that COVID-19, in combination with defendant's underlying conditions, no longer presented an extraordinary and compelling reason to grant compassionate release). In Singh, the court recognized that the inmate had underlying medical conditions which ordinarily would have established grounds for compassionate release. The court concluded, however, that vaccination mitigated those risks. Id. at *3. The court's conclusion was "in accord with the vast majority of courts that have considered this issue." Id. (citations omitted). In other words, these decisions teach that because Mendoza is fully vaccinated, he faces a reduced risk that: (1) he will again contract the COVID-19 virus; and (2) if he is reinfected, he will experience severe symptoms, as he did in May 2020.

In Singh, the court emphasized that an inmate bears the burden to demonstrate that compassionate release is warranted. Id. at *4. The court denied the motion without prejudice to the inmate's opportunity to file a new motion supported by evidence that the vaccine would not mitigate a substantial risk of serious illness from a COVID-19 infection. Id.

In this case, Mendoza similarly failed to meet his burden to demonstrate that he continues to face a substantial risk from the COVID-19 virus. Attached to his motion is a Declaration of Tara Vijayan, M.D., M.P.H. ("Dr. Vijayan") (ECF No. 175-2). The Declaration is dated November 24, 2020, and does not address the impact of Mendoza's recent vaccination. Relevant to the pending motion is Dr. Vijayen's opinion that the risk of being reinfected with the COVID-19 virus is not common during the 90 days after contracting the disease, but has been documented, with some individuals presenting with more severe disease than the first infection. Id. at 2. Individuals who previously had severe cases of COVID-19 (such as Mendoza) have a

stronger and longer-lasting immunity than individuals who had milder illness. Id. at 7. Dr. Vijayen observed that the Pfizer and Moderna vaccines are promising and their efficacy appears to be greater than 90%. Id. at 8. He noted that even if a vaccine is widely administered to an entire jail population and its staff, it will not be a "silver bullet" and it is unknown how long the immune response will last. Id. at 9.

As noted above, Mendoza did not provide any additional evidence with his reply brief, but raised questions about the long-term effectiveness of the vaccine through attorney argument. While there are certainly still unknowns about the vaccine administered to Mendoza, it appears that Mendoza's risks of (1) being reinfected by COVID-19, and (2) suffering severe illness if he is reinfected, are speculative because of his vaccination and his initial bout with COVID-19 in May 2020. On this record, the court concludes that Mendoza failed to meet his burden to show extraordinary and compelling reasons for compassionate release due to the COVID-19 virus.

      b. Whether Mendoza faces an actual, non-speculative risk of recontracting the COVID-19 virus at FMC Fort Worth

The court takes judicial notice that there are only 3 current cases of COVID-19 infections at FMC Fort Worth. Although the court recognizes the BOP's significant efforts to minimize and control the spread of the pandemic, it is well-established that it is difficult to engage in social distancing and other mitigation efforts in a congregate setting such as a prison. The court recognizes that over 700 inmates at FMC Forth Worth have tested positive for COVID-19 over the course of the pandemic and that 14 have died.

The government reports that over 300 inmates at FMC Fort Worth have now been vaccinated for COVID-19, which represents approximately 25% of the inmate population. Vaccination of all or substantially all inmates and staff will limit the spread of the virus and

reduce the risk of exposure at FMC Fort Worth. As noted above, even if Mendoza is exposed to the COVID-19 virus, it appears that he will be far less likely to be reinfected due to his vaccination. In sum, it would be speculative at this point for the court to conclude there is an actual risk that Mendoza, after his vaccination, will be reinfected by the COVID-19 virus at FMC Fort Worth.

      c. Conclusion about COVID-19

Because Mendoza received the two-step Pfizer vaccine, the court cannot find that he met his burden to establish that he is at "*uniquely* high risk" of being reinfected with the COVID-19 virus or experiencing serious illness if he is reinfected with the COVID-19 virus.[5] To conclude otherwise would be speculative, based upon the record before this court. In sum, Mendoza did not show an extraordinary and compelling reason for his compassionate release.

---

[5] The court notes that the COVID-19 conditions at FMC Fort Worth, alone, do not constitute extraordinary and compelling reasons for Mendoza's release. The Third Circuit Court of Appeals has recognized:

> [T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread. See generally Federal Bureau of Prisons, COVID-19 Action Plan (Mar. 13, 2020, 3:09 PM), https://www.bop.gov/resources/news/20200313_COVID19.jsp.

United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020). Thus, as the court explained in Somerville, a defendant must show there is an actual risk he or she will contract COVID-19 while incarcerated **and** that he or she is particularly at-risk of suffering grave illness if he or she contracts COVID-19. Because Mendoza is fully vaccinated, both of these risks are significantly reduced.

### 3. Section 3553(a) factors

Even assuming, arguendo, that Mendoza articulated extraordinary and compelling reasons, the court would deny his motion. The compassionate release statute states that a court may reduce the term of imprisonment "after" it considers the sentencing factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable. 18 U.S.C. § 3582(c)(1)(A). Even if Mendoza established an extraordinary or compelling reason for release, release must also be consistent with the § 3553 factors and guidelines policies. In doing so, the court will consider the most up-to-date picture of the defendant's history and characteristics. *See United States v. Tidwell*, No. CR 94-353, 2020 WL 4504448, at *7 (E.D. Pa. Aug. 5, 2020). Mendoza provided evidence of post-sentencing rehabilitation in his participation in business, Spanish, parenting and anger management courses, employment positions and tutoring of other inmates attempting to obtain a GED (ECF No. 175 at 27, 175-17). The court recognizes that the conditions of his confinement over the past year have been more onerous than anticipated due to the BOP's response to the COVID-19 virus.

The government emphasizes that Mendoza poses a danger to the community if released. The "danger to the community" policy consideration in U.S.S.G. § 1B1.13 is somewhat similar to the § 3553(a)(2)(C) sentencing factor that a sentence "protect the public from further crimes of the defendant." The government argues that Mendoza remains a danger to the community based upon his lengthy past drug distribution activities.

The court weighed the § 3553(a) factors in imposing the original sentence. At that time, the court recognized that the statutory mandatory minimum was higher than the otherwise-applicable advisory guideline range. The court noted that Mendoza was intelligent and had family in Texas and recommended that he participate in the 500-hour drug treatment program.

16

Upon reexamining the § 3553(a) factors, the court again adheres to its determination. Mendoza committed a serious offense. He was a primary actor in a large-scale (25-35 kilograms) cocaine distribution conspiracy. Mendoza had the connection with the source of supply and planned the method for shipping the cocaine to Pennsylvania. Mendoza chose to initiate this conspiracy soon after being released from custody for a very similar cocaine conspiracy scheme. As the government points out, Mendoza admitted to being engaged in drug dealing since 1999, although he contended that he distributed marijuana rather than cocaine.

The court notes Mendoza's rehabilitative efforts and urges him to continue those efforts. The court is aware of the 3 disciplinary infractions Mendoza committed while in prison. The most serious infraction, escape, occurred over 6 years ago, in 2014. Mendoza described that event as a "temporary moment of insanity." (ECF No. 175-19). The corrections officer observed that Mendoza made a poor adjustment to incarceration up to that point. Id. The court notes, with approval, that Mendoza has had a clean disciplinary record since that time.

A reduction of his sentence would not be consistent with the statutory sentencing purposes of deterrence to criminal conduct and protection of the public from further crimes by the defendant. Mendoza has only one prior conviction, but it was also for a serious cocaine distribution offense. The court agrees with the government that because he returned to drug dealing soon after being released from custody, Mendoza would pose a significant danger to the community by again dealing drugs if granted compassionate release. Even if "non-violent," drug dealing poses a significant danger to the community. United States v. Mosqueda, Nos. 16-233& 17-98, 2017 WL 5157847 (W.D. Pa. Nov. 7, 2017).

The original sentence imposed was the statutory mandatory minimum, which became the applicable guideline range. Compassionate release, particularly after Mendoza's vaccination,

may create a disparity with other defendants with similar criminal histories who committed similar offenses. The disparity in sentences between Mendoza and his co-conspirators is largely explained by the co-conspirators' cooperation, Mendoza's decision to go to trial, the § 851 Information filed in Mendoza's case, and the statutory mandatory sentence. Restitution was not applicable and Mendoza was unable to pay a fine. In sum, the court reaffirms that a term of imprisonment of 240 months is sufficient, but not greater than necessary, to accomplish the sentencing purposes.

### V. Conclusion

Once a court imposes a sentence and it becomes final, it may not be modified unless an exception to the rule of finality applies in the case. Here, Mendoza did not satisfy his burden under § 3582(c)(1)(A) to show that an extraordinary and compelling reason warrants his compassionate release from imprisonment. Even assuming Mendoza met that burden, compassionate release is not appropriate after consideration of the policies and § 3553(a) factors. His renewed motion for compassionate release (ECF No. 175) will, therefore, be denied. The denial is without prejudice in the event Mendoza's circumstances or the conditions at his place of confinement change.

An appropriate order will be entered.

Dated:   April 8, 2021.

BY THE COURT:

s/ Joy Flowers Conti
Joy Flowers Conti
Senior United States District Judge